UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

In re:

                                       Chapter 11 / Involuntary

COCOA EXPO SPORTS CENTER, LLC         Case No. 6:19-BK-07295-KSJ

       Debtor.

_____/

**CREDITOR BANK OF WASHINGTON'S**
**MOTION TO DISMISS, OR IN THE ALTERNATIVE,**
**MOTION FOR RELIEF FROM AUTOMATIC STAY OR TO ABSTAIN**

---

**NOTICE OF OPPORTUNITY TO OBJECT AND FOR HEARING**

**Pursuant to Local Rule 2002-4, the Court will consider this motion, objection, or other matter without further notice or hearing unless a party in interest files an objection within 21 days from the date set forth on the proof of service attached to this paper. If you object to the relief requested in this paper, you must file your objection with the Clerk of the Court at 400 W. Washington St., Suite 5100, Orlando, FL 32801, and serve copies on: Phil A. D'Aniello, Esq., Fassett, Anthony & Taylor, P.A., 1325 W. Colonial Dr., Orlando, FL 32804.**

**If you file and serve an objection within the time permitted, the Court may schedule and notify you of a hearing, or the Court may consider the objection and may grant or deny the relief requested without a hearing. If you do not file an objection within the time permitted, the Court will consider that you do not oppose the relief requested in the paper, will proceed to consider the paper without further notice or hearing, and may grant the relief requested.**

---

Secured creditor Bank of Washington ("**Creditor**") pursuant to 11 U.S.C. § 303, 305, 362, 1112, and 1129(a)(3), (a)(7)(A)(ii), (a)(10-11), (b)(2)(A), Federal Rules of Bankruptcy Procedure 3020(b), 4001, and 9014, and other applicable law, hereby files this Motion to Dismiss this involuntary bankruptcy filed by Petitioning Creditors UDF XIV SPE B, LLC, Urban Development Fund XXIII, LLC, and Deego Productions, Inc. (collectively, the "**Petitioning Creditors**") against Cocoa Expo Sports Center, LLC (the "**Debtor**"), or in the alternative, Motion for Relief From the Automatic Stay or Motion to Abstain, and states as follows:

1

## I. <u>Introduction</u>

This Bankruptcy must be dismissed (or converted to a Chapter 7) because: (a) it was filed in bad faith by Petitioning Creditors with knowledge of a ***prior injunction barring Debtor from filing bankruptcy*** and merely as a tactic to delay Creditor's pending state court foreclosure action against Debtor and the Junior Creditors, (b) the Debtor was ***enjoined by this Court from filing bankruptcy until February 19, 2021***, (c) the Debtor has no reasonable hope of reorganizing, and/or (d) upon information and belief, the Petitioning Creditors have colluded with the Debtor to file this bankruptcy in an attempt to avoid this Court's injunction prohibiting the Debtor from filing Bankruptcy.

Further, the Bankruptcy was filed in bad faith since Debtor has no possibility of being able to confirm a Plan since the Debtor has been shown to have no ability to pay its debts as they come due despite being given a three (3) *year* reprieve from paying any secured creditors and because the Bankruptcy was filed for the sole purpose of delaying the foreclosure of the Debtor's real property.

In the alternative to dismissal, pursuant to 11 USC § 362(d)(1-2) and (4), Federal Rule of Bankruptcy Procedure 4001 and Local Rule 4001-1, Creditor has also filed herewith a Motion for Relief From Stay to continue its foreclosure upon the Debtor's real property which constitutes Creditor's collateral. In the alternative, pursuant to 11 USC § 305(a)(1), this Court should abstain from proceeding in the best interests of the Debtor and all creditors.

## II. <u>Procedural History</u>

This Court has jurisdiction over this matter under 28 U.S.C. § 157 and 1471, as this proceeding arises in the Chapter 11 case of the above-named Debtor. This is a core proceeding under 28 U.S.C. § 157. The Petitioning Creditors filed this involuntary bankruptcy on November

5, 2019 (the "**Petition Date**") (Doc 1). Two of the Petitioning Creditors, UDF XIV SPE B, LLC and Urban Development Fund XXIII, LLC are junior lien holders to the Creditor (collectively, the "**Junior Creditors**") and pursuant to the Corporate Ownership Statement (Doc 2), are jointly owned 99.99% by the same entity.

On November 27, 2019, the Debtor filed its Response and Consent to Involuntary Petition (Doc 10). On December 2, 2019, the Debtor's sole Managing Member, Jeffrey Unnerstall ("**Unnerstall**"), filed a Corporate Ownership Statement (Doc 11).

The Debtor previously filed a Petition for Relief pursuant to Chapter 11 of the United States Bankruptcy Code on January 23, 2017 as Case No. 6:17-bk-00441-RAC (the "**Prior Bankruptcy**"). On February 19, 2019, this Court entered its Final Decree (Doc 268 in the Prior Bankruptcy) which stated that:

> **Debtor is enjoined from filing a case** under any chapter of Bankruptcy Code, 11 U.S.C §§ 100 *et. seq.,* for a period of two (2) years after the date of this Order.

Creditor holds a secured claim as of the Petition Date in the amount of $13,831,447.80 plus interest against real property believed to be valued at about $11,000,000.[1]

## II. Background Facts

### i. *The Original Loans*

Between November 30, 2011 and January 23, 2014, the Creditor made secured loans to the Debtor and an its affiliates which currently exceed $13,800,000.00 (the "**Loans**") and are secured by real and personal property located in Brevard Cunty, Florida (the "**Collateral**") pursuant to recorded mortgages and perfected security agreements (the "**Security Agreements**"). In

---

[1] Debtor's Disclosure Statement in the Prior Bankruptcy (Doc. 96) revealed that the property had an assessed value of $10,875,260 as of 2017 and that the Debtor and Creditor agreed that the property had a value of at least $20,000,000. However, no valuations of the property were conducted in the prior Bankruptcy and no third parties have come forward to purchase or refinance the Collateral in the three years since the initial default.

connection with those Loans, the Junior Creditors executed and delivered to Creditor a Subordination of Mortgage ("**First Subordination**") that subordinated all rights, interests, and liens of the Junior Creditors to the interests of Creditor. The Security Agreements and First Subordination were all duly recorded and perfected.

The Debtor's sole Member and Manager, Unnerstall, is a guarantor of the Loans and is also the sole Manager of an affiliate known as Eztopeliz, LCC ("**Eztopeliz**"). Creditor was also the holder of a September 19, 2005 $6.5 million Promissory Note executed by Eztopeliz that was also secured by real property in Brevard County and was also guaranteed by Unnerstall ("**Eztopeliz Loan**").

### ii. *The First Default and Bankruptcy*

In 2016, the Debtor and its affiliate defaulted under the terms of the Loans and Unnerstall failed to cure the default. Also, the Eztopeliz Loan matured and became fully due and payable on September 16, 2016, but Eztopeliz and Unnerstall failed and refused to pay the amount due.

As a result, in January 2017, the Creditor filed an action in state court in Missouri seeking to appoint a receiver over the Debtor (the "**Missouri Case**") and on January 16, 2017 filed a foreclosure case against Eztopeliz and Unnerstall in Brevard County Florida.

As a result, on January 18, 2017, Unnerstall filed a petition for relief under Chapter 11 of the Bankruptcy Code before this Court on January 18, 2017 (the "**Unnerstall Bankruptcy**") and on January 23, 2017, the Debtor filed the Prior Bankruptcy. Eztopeliz failed to respond to the State Court Case and on April 26, 2017, a default was entered against Eztopeliz.[2]

During the Prior Bankruptcy, it was discovered that the Debtor had badly mismanaged the business and Collateral and did not have sufficient revenues to pay the Creditor's debts much less other obligations.

---

[2] Otherwise, by agreement of the parties, the Eztopeliz Case was halted pending the outcome of the Unnerstall Bankruptcy and Prior Bankruptcy.

### iii. *Debtor's Delay Tactics*

During the Prior Bankruptcy, the Debtor missed every single revenue projection, failed to pay its expenses as they came due, failed to keep a proper record of its income and expenses, continued to operate through an affiliate for months after filing the Bankruptcy including funneling income and expenses through such affiliate, failing to report income and expenses in its Monthly Operating Reports, continued to pay the expenses of affiliates, paid salary and compensation to the Debtor's managing member and his family without court approval, failed repeatedly to open DIP bank accounts, and was required to appear for a 341 Meeting of Creditors on three (3) separate occasions either as a result of not showing up or willfully failing to bring required documents to the meeting.

The Debtor testified at its February 27, 2017 Meeting of Creditors (in the Prior Bankruptcy) and before this Court on March 30, 2017 (in the Prior Bankruptcy), that it was unaware of essential information concerning the business affairs of the Debtor and Debtor-in-Possession, including but not limited to: (a) what bank had its DIP accounts, (b) how many DIP bank accounts it had, (c) the name of its payroll service, (d) when the Debtor made its last payment on its first mortgage, (e) the reason why the Debtor owed money to the Internal Revenue Service, (f) the status of a wrongful death suit against the Debtor, (g) the terms of a lease to an affiliate, (h) whether affiliates owed any money to the Debtor, (i) the compensation received by Unnerstall and his family members in 2016, (j) whether the Debtor used affiliates' bank accounts to pay expenses and deposit receivables, (k) the accuracy of Debtor's financial statements, and (l) what efforts the Debtor had made to market itself to investors or seek financing.

Of note, the Debtor allowed its insurance coverage upon the Collateral to lapse just four (4) days after this Court ordered Debtor to maintain such coverage (in the Prior Bankruptcy).

As a result, and at this Court's own suggestion (in the Prior Bankruptcy), on April 26, 2017, Creditor filed in the a Motion to Appoint Trustee (Doc 89 in the Prior Bankruptcy). As a result, on May 19, 2017, this Court entered orders appointing an Examiner over the Debtor (Doc 101 and 112 in the Prior Bankruptcy).

After a June 15, 2017 mediation was held with the Examiner wherein a settlement was reached, on August 8, 2017, the Debtor filed a *First Amended Plan of Reorganization* and on August 16, 2017, filed *Debtor's First Amendment to Amended Plan of Reorganization* (collectively, the "**Cocoa Plan**") (Doc 120-121 in the Prior Bankruptcy). On August 21, 2017, the Bankruptcy Court entered an *Order Approving Disclosure Statement and Confirming Debtor's Chapter 11 Plan* ("**Cocoa Order**") (Doc 173 in the Prior Bankruptcy).

Pursuant to the Cocoa Plan and Cocoa Order, Creditor retained its lien under the Security Agreements and Debtor was required to execute revised loan documents for the Loans with additional collateral transferred from Debtor's affiliates with an effective date of October 13, 2017 ("**Revised Loan Documents**").

Under the Cocoa Plan, the Debtor would not have to make a payment upon the Revised Loan Documents until September 1, 2019, so long as Debtor timely paid real estate taxes and other obligations. Further, the Junior Creditors were required to execute a further subordination of their interests to the Revised Loan Documents ("**Renewed Subordination**").

Also, under the Cocoa Plan, Eztopeliz was required to timely pay its real estate taxes due by December 31, 2017; and if not paid, Creditor had the right to foreclose the Eztopeliz property in the pending state court case that had been voluntarily stayed.

However, Eztopeliz failed to pay the taxes by December 31, 2017 and the ***Debtor refused to execute the Revised Loan Documents for almost a year***.

On April 25, 2018, Creditor obtained a Final Judgment of Foreclosure in state court against Eztopeliz which set a sale date of June 13, 2018 ("Eztopeliz Sale"). The day before the Eztopeliz Sale, on June 12, 2018, Eztopeliz filed its Bankruptcy before this Court as Case No. 6:18-bk-03486-KSJ (the "**Eztopeliz Bankruptcy**") for the sole purpose of hindering and delaying the Foreclosure Sale.[3]

On June 21, 2018, Creditor was required to file an Objection to the Debtor's request for Final Decree in the Prior Bankruptcy (Doc 268) and a final evidentiary hearing was set for November 14, 2018.

### iv. *Settlement and Final Decree*

Finally, on November 14, 2018, Creditor, Debtor, and others entered into a Settlement Agreement that required, among other things, the Debtor to execute and deliver to the Revised Loan Documents (the "**Settlement**").

Debtor again refused to comply and on January 7, 2019, Creditor was forced to file Motion to Compel Compliance with Settlement and For Sanctions (Doc 260 in the Prior Bankruptcy).

Thereafter, pursuant to the Cocoa Plan and Settlement, the Debtor finally executed and delivered to Creditor the Revised Loan Documents (with an effective date of October 13, 2017) and the Junior Creditors then executed and delivered to Creditor the Renewed Subordination.

Under the Cocoa Plan, Settlement, and Revised Loan Documents, the Debtor would be excused from making any payments upon *all* of its obligations (except insurance) through August 19, 2019 -- meaning the Creditor would have gone without a payment upon its principal debt for about three (3) years.

---

[3] At the Creditor's 341 Meeting in the Eztopeliz Bankruptcy, Unnerstall testified (as the Eztopeliz's only principal) that the only purpose of the Eztopeliz Bankruptcy was to delay the Creditor's recovery.

On February 19, 2019, this Court entered its Final Decree (Doc 268 in the Prior Bankruptcy) which **enjoined the Debtor from filing another Bankruptcy** "under any chapter of the Bankruptcy Code ... for a period of two (2) years".

### v.  *The Second Default*

The Debtor *again* defaulted under the terms of the terms of the Cocoa Plan, Settlement, and Revised Loan Documents by: (a) failing to pay all of the past due real estate taxes due on the Collateral or before August 1, 2019, (b) failing to pay the Junior Creditors and cure such default on or before August 1, 2019, and (c) failing to make the initial monthly payment of $22,720.57 due to Creditor on September 1, 2019 (collectively, the "**Second Default**"). In fact, the Debtor has not made a single payment to the Creditor under the Revised Loan Documents.

As a result of the Second Default, on September 12, 2019, Creditor filed a foreclosure action against the Collateral before the Eighteenth Circuit Court of Brevard County, Florida as Case No. 05-2019-CA-045819 XXXX-XX (the "**Foreclosure Action**").

On October 1, 2019, the State Court entered an *Order to Show Cause Why Final Judgment of Foreclosure Should Not Be Entered* which set a foreclosure hearing for November 6, 2019. The Debtor did not appear in the case or seek to defend the case and a default was entered against the Debtor. The Junior Creditors filed an Answer and Affirmative Defenses which essentially complained that the procedures for foreclosure under Florida law would prevent the Junior Creditors from collecting upon their debt if Creditor was the successful bidder upon a credit bid at the foreclosure sale.[4] The Junior Creditors take issue with the fact that in order for their debt to be paid, they or a third party must first pay off the Creditor's Loans in full -- which is exactly what they agreed to when they executed the Renewed Subordination.

---

[4] The Junior Creditors ignore the fact that they had the right to bid upon the Collateral and/or pay of the senior debt and seek their own foreclosure.

As of November 6, 2019, Creditor was due upon the Revised Loan Documents the following:

| | |
|---|---|
| Development Loan principal balance: | $3,182,660.83 |
| 657 days 6% Interest to 8/1/19 is: | $   343,727.37 (at $523.1777123 per diem) |
| 98 days 25% default interest (8/2-9/6): | $   213,532.66 (at $2,178.90468 per diem) |
| Late Fee due on 9/1/19 Payment: | $       1,136.03 (imposed on 9/5/19) |
| Total Due on 11/6/19: | $3,741,056.89 |
| | |
| First Cocoa Note principal balance: | $3,963,829.41 |
| 657 days 6% Interest to 8/1/19 is: | $   428,093.58 (at $651.588396 per diem) |
| 98 days 25% default interest (8/2-9/6): | $   266,065.26 (at $2,714.951651 per diem) |
| Late Fee due on 9/1/19 Payment: | $       1,414.86 (imposed on 9/5/19) |
| Total Due on 11/6/19: | $4,659,403.11 |
| | |
| Second Cocoa Note principal balance: | $4,607,592.91 |
| 657 days 6% Interest to 8/1/19 is: | $   497,620.03 (at $651.588396 per diem) |
| 98 days 25% default interest (8/2-9/6): | $   294,385.73 (at $3,003.936 per diem) |
| Late Fee due on 9/1/19 Payment: | $       1,644.65 (imposed on 9/5/19) |
| Total Due on 11/6/19: | $5,401,243.32 |

Combined Amounts Due

| | |
|---|---|
| Development Loan: | $ 3,741,056.89 |
| First Cocoa Note: | $ 4,659,403.11 |
| Second Cocoa Note: | $ 5,401,243.32 |
| Fees and Expenses: | $      29,744.50 |
| | $13,831,447.80 |

### *vi. __The Second Bankruptcy__*

Unwilling to live with the bargain they had made, on November 5, 2019, on the eve of the Show Cause Hearing which would have resulted in a Final Judgment of Foreclosure, the Junior Creditors, in an attempt to delay the Foreclosure Action filed this involuntary bankruptcy. The Junior Creditors listed debts of $7,500 each and the third Petitioning creditor listed a debt of $2,142 (or a total of $17,142. (Doc 1).

Creditor has learned that as a result of this Bankruptcy, Unnerstall has asserted that the Debtor will attempt to continue to stall and delay this Bankruptcy like the Prior Bankruptcy for another two years or more.

The sole purpose of the Bankruptcy was for the Junior Creditors and Debtor to avoid the effect of the Foreclosure Action and continue to prevent Creditor from collecting upon the debts owed.

## IV. Motion[5]

Creditor is entitled to dismissal or immediate relief from the automatic stay "for cause" pursuant to § 362(d)(1) and 1112(b)(1 and 4) of the Bankruptcy Code because the Debtor was not entitled to be Debtor under any provision of the Code and because the Junior Creditors filed the involuntary bankruptcy petition in bad faith and/or the Junior Creditors colluded with the Debtor to file the involuntary bankruptcy petition in bad faith.

### A. The Debtor is Not Entitled to Relief

The Bankruptcy must be dismissed because it was not filed in good faith where the Debtor and Petitioning Creditors were aware that the Debtor was not entitled to Relief under the Bankruptcy Code since the Involuntary Petition was not filed against an entity that could be a Debtor.[6]

11 U.S.C. § 303(a) states that:

> An involuntary case may be commenced ... against a person ... or a corporation ... **that may be a debtor** under the chapter under which such case is commenced.

Bad faith can be raised to dismiss an involuntary bankruptcy. In re Forever Green Athletic Fields, Inc., 804 F.3d 328, 334 (3d Cir. 2015); In re Zais Investment Grade Ltd., 455 B.R. 839 (Bank. D. N.J. 2011); In re Betteroads Asphalt, LLC, 594 B.R. 516, 557 (Bankr. D. P.R. 2018).

[5] Creditor reserves the right to file an Amended Motion to Dismiss and/or Memorandum of Law in support should any party object to the relief requested herein.

[6] The Junior Creditors were interested parties in the Prior Bankruptcy and had direct notice of the Final Decree and injunction.

The motivation by the both the Debtor the Junior Creditors in filing this bankruptcy was for the sole purpose of avoiding the consequences of the state court Foreclosure Action after the Debtor already had an opportunity to reorganize under the Prior Bankruptcy. In re Forever Green Athletic Fields, Inc., 500 B.R. 413, 425 (Bankr. E.D. Pa. 2013) (bad faith can be shown if petitioning creditors do not have a valid bankruptcy purpose in filing involuntary petition). The purpose of this petition was merely to circumvent this Court's prior injunction against the Debtor and avoid the consequences of the Cocoa Plan and Renewed Subordination.

Pursuant to this Court's order enjoining the Debtor from filing Bankruptcy, the **Debtor was not entitled to be a Debtor under any chapter of the Bankruptcy Code** and this matter must be dismissed where it was filed in bad faith.

### B. The Petition Was Filed in Bad Faith

A lack of good faith is a basis for a secured creditor to seek dismissal of a case or relief from the automatic stay. While § 1112 provides that a bankruptcy court, after notice and a hearing, may dismiss a Chapter 11 case for cause, dismissal of a Chapter 11 case for a lack of good faith is not expressly covered in the list of nonexclusive grounds in the Bankruptcy Code. However, there is an implicit requirement that a bankruptcy case must be filed in good faith. In re Phoenix Picadilly Ltd., 849 F.2d 1393, 1394 (11th Cir. 1988) (examining case for *subjective* bad faith); In re State Street Houses, Inc., 356 F.3d 1345, 1346 (11th Cir. 2004). A bankruptcy case filed in bad faith constitutes "cause" for dismissal under 11 U.S.C. § 1112. "A court may dismiss a Chapter 11 case if a petition for relief was filed without good faith." In re: Canbec Investment Corp., 349 B.R. 915, 918 (Bankr. M.D. Fla. 2006); In re: Aurora Investments, Inc., 134 B.R. 982 (Bankr. M.D. Fla. 1991); Phoenix Piccadilly.

Subjective bad faith examines the motivation for filing a petition and requires an honest intention to reorganize financial affairs in accordance with the policies underlying the Bankruptcy Code. In re Setzer, 47 B.R. 340 (Bankr. E.D.N.Y. 1985). A petition is generally filed in subjective bad faith when it is filed solely to cause hardship to a secured creditor without any real ability or willingness to reorganize (or liquidate in an orderly manner). Carolin Corp. v. Miller, 886 F.2d 693, 702 (4th Cir. 1989).

A bankruptcy court is required to examine the totality of the circumstances in the case and "determine whether the circumstances indicate a lack of good faith." Canbec Investment, at 918. Dismissal of a petition for lack of good faith is appropriate, particularly when there is no realistic possibility of an effective reorganization and it is evident that the petition was filed merely to delay or frustrate the legitimate efforts of secured creditors to enforce their rights. In re: Albany Partners, Ltd., 749 F.2d 670, 674 (11th Cir. 1984). In Canbec Investment, this Court determined the case was not filed in good faith and dismissed the case where the debtor's only assets were encumbered by mortgages and were the subject of foreclosure proceedings and the debtor's financial problems were the result of a dispute with the secured creditor. Canbec Investment, at 918.

Although most cases dealing with bad faith are examined from the Debtor's motivation, the requirement of good faith applies equally to creditors in filing an involuntary petition. Zais Investment Grade, 455 B.R. at 848. Section 1112(b)(4) sets forth several factors which constitute "cause" for dismissal, including loss or diminution of the estate, mismanagement of the estate, lack of insurance, unauthorized use of cash collateral, and failure to comply with a court order, and the material default of a confirmed plan. The Debtor has a long history of mismanagement, violated the Court's order and injunction against filing a bankruptcy, and failed to comply with the terms of the Cocoa Plan.

In addition to the enumerated factors of 1112(b)(4), a bankruptcy court must evaluate several factors in making its bad faith determination. Factors in determining bad faith include: (i) motivation in seeking relief; (ii) income from all sources; (iii) expenses; and (iv) (the debtor's) degree of effort. In re Kitchens, 702 F.2d 885 (11th Cir. 1983) (regarding a Chapter 13 Plan). In Chapter 11 cases, the Eleventh Circuit Court has considered circumstantial factors as evidencing a bad faith filing as follows: (1) the debtor has only one or few assets; (2) the debtor has few unsecured creditors whose claims are small in relation to the claims of the secured creditors; (3) the debtor has few employees; (4) the property is the subject of a foreclosure action as a result of arrearages on the debt; (5) the debtor's financial problems involve essentially a dispute between the debtor and the secured creditors which can be resolved in state court; and (6) the timing of the debtor's filing evidences an intent to delay or frustrate the legitimate efforts of the secured creditor to enforce its rights. Phoenix Picadilly, at 1394-95.[7] Courts may also "consider any factors which evidence 'an intent to abuse the judicial process and the purposes of the reorganization provisions' or in particular, factors which evidence that the petition was filed to delay or frustrate the legitimate efforts of secured creditors to enforce their rights.'" Phoenix Piccadilly, at 1394, *quoting* In re Albany Partners, Ltd., 749 F.2d 670 (11th Cir. 1984).

If the evaluation of the factors supports a finding of bad faith, a case *must* be dismissed regardless of whether the debtor has equity in the property or a potential for a successful reorganization. Phoenix Piccadilly, 849 F.2d at 1395. Most, if not all, of the above factors are present in this case, thereby warranting dismissal of the case as a bad faith filing as follows:

      a.      The Debtor's only significant asset is the Collateral.

---

[7] *See* In re State Street Houses, Inc., 356 F.3d 1345 (11th Cir. 2004), upholding the factors established in the Phoenix Picadilly case.

b.     The Debtor has no non-insider unsecured creditors. The Petitioning Creditors' debt is dwarfed by the amount of the Creditor's secured claim.

c.     The Debtor has one principal who is the sole Member and Manager.[8]

d.     The Debtor's financial problems involve primarily a dispute between the Debtor and Creditor about whether and how its secured debt will be paid.

e.     The Debtor cannot be reorganized and has no ability to reinvent itself. The Debtor has been given every opportunity to turn around its fortunes without having to pay any debt service for the past three years. The only realistic option is to turn over the Collateral to Creditor or a find a willing buyer that will pay the creditor's debt (none has been forthcoming). The most effective and efficient resolution of such debt is state court foreclosure proceedings.

f.     The timing of the filing was clearly intended to delay or frustrate the legitimate efforts of the Creditor to enforce its rights. The sole reason for the Involuntary Petition was the fact that a foreclosure judgment was going to be entered the next day.

A debtor's unlikely ability to successfully reorganize is also a factor in determining whether to dismiss a case as a bad faith filing. In re Brandywine Associates, Ltd., 85 B.R. 626 (Bankr. M.D. Fla. 1988). In Brandywine, this Court dismissed the case where the debtor's sole asset was an apartment complex with no significant unsecured creditors, and the debtor *could not generate cash to service the debt* and had few or no employees. Id. at 627-28.

Here, Debtor cannot show a realistic probability of a successful reorganization. The current amount due and owing from Debtor is barely covered by the value of the Property and the Debtor does not have any source of income that will allow Debtor to service its debts. Indeed, Debtor's sole possible source of funds to pay Creditor is through the liquidation of the Property.

---

[8] The Debtor has not provided any information regarding the pre-petition number and nature of its employees, but previously, the significant employees were mostly insider family members of Unnerstall.

Under on the <u>Phoenix Piccadilly</u> factors, the filing was unquestionably in bad faith and this Court should dismiss the case (or grant Creditor relief from the automatic stay for cause as discussed below).

### C. <u>Creditor Entitled to Stay Relief</u>

In the alternative to dismissal for filing the Petition in bad faith, this Court should grant Creditor immediate stay relief for cause as result of bad faith and/or a lack of equity or ability to adequately protect the Creditor or reasonably reorganize. Section 362(d)(1-4) sets forth the grounds for relief from the automatic stay in the present case as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay --
> (1) for cause, including the lack of adequate protection of an interest in property of such party in interest;
> (2) with respect to a stay of an act against property under subsection (a) of this section, if --
>> (A) the debtor does not have an equity in such property; and
>> (B) such property is not necessary to an effective reorganization.
> (3) with respect to a stay of an act against single asset real estate under subsection (a), by a creditor whose claim is secured by an interest in such real estate, unless, not later than the date that is 90 days after the entry of the order for relief (or such later date as the court may determine for cause by order entered within that 90-day period) or 30 days after the court determines that the debtor is subject to this paragraph, whichever is later --
>> (A) the debtor has filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time...
> (4) with respect to a stay of an act against real property under subsection (a), by a creditor whose claim is secured by an interest in such real property, if the court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved ....
>> (B) multiple bankruptcy filings affecting such real property.

A decision to lift the stay is discretionary with the bankruptcy judge and may be reversed only upon a showing of abuse of discretion. <u>In re Dixie Broadcasting, Inc.</u>, 871 F.2d 1023, 1026

(11th Cir. 1989). As used in § 362(d)(1), the term "cause" is a broad and flexible concept which permits a bankruptcy court, as a court of equity, to respond to inherently fact-specific situations. In re Indian River Estates, Inc., 293 B.R. 429, 433 (Bankr. N.D. Ohio 2005). The test for determining "cause" to modify the stay to permit the continuation of litigation has been articulated as follows:

  a.    Any "great prejudice" to either the bankruptcy estate or the debtor will result from a continuation of the civil suit,
  b.    The hardship to the creditor by maintenance of the stay considerably outweighs the hardship to the debtor, and
  c.    The creditor-plaintiff has a probability of prevailing on the merits of his case.

There is no prejudice to either the bankruptcy estate or the Debtor from continuation of the state court case since the Debtor has not been able to show that it holds any significant equity in the Collateral and does not have the ability to reorganize and pay off the Loans.

Good cause exists for lifting the automatic stay because: (1) Creditor lacks adequate protection since the Debtor is unable to pay the debt currently or in future and does not have any significant income to pay the Loans, past due taxes, or upcoming taxes and expenses, (2) the Debtor cannot establish that holds any significant equity in the Collateral and is not generating any significant income from the Collateral, (3) the Creditor will be irreparably harmed as a result of the declining value of the Collateral due to mismanagement, and (4) the Collateral is not necessary for the effective reorganization of the Debtor because no plan would have a reasonable possibility of success, (5) this Bankruptcy is part of scheme to delay Creditor's relief through multiple bankruptcy filings in violation of this Court's injunction.

### i. *Stay Relief for Bad Faith*

The filing of a Chapter 11 case in bad faith constitutes "cause" within the meaning of § 362(d)(1) for lifting the automatic stay. Albany Partners; In re: Sar-Manco, Inc., 70 B.R. 132, 142 (Bankr. M.D. Fla. 1989). The same factors set out in Phoenix Piccadilly described above are

relevant to whether bad faith exists to lift the automatic stay. Id. As set forth above, all of the factors are present in this case.

The factors considered by the courts in bad faith cases relating to granting relief from the automatic stay have been described as "generally fall[ing] within three basic categories: (1) whether the debtor is actually an operational business enterprise which employs persons in the community and has ongoing business operations that may be rehabilitated or reorganized ..., (2) whether the debtor has filed a petition for reorganization on the eve of foreclosure or similar judicial action and bankruptcy offers the only means of forestalling loss of the debtor's business; and (3) whether the debtor has realistic probability of a successful reorganization." In re: Plummer, 115 B.R. 371 (Bankr. M.D. Fla. 1990), citing In re RADet Properties, Inc., 84 Bankr. 827, 830 (Bankr. M.D. Fla. 1988).

Cause for relief is usually found to exist when a debtor files his bankruptcy petition in bad faith. In re Mack, 2007 WL 1222575, at *5 (M.D. Fla. Apr. 24, 2007), citing Dixie Broadcasting, 871 F.2d at 1026. Determining bad faith involves a consideration of a host of actors. As the Fifth Circuit stated:

> Determining whether the debtor's filing for relief is in good faith depends largely upon the bankruptcy court's on-the-spot evaluation of the **debtor's financial condition, motives, and the local financial realities**. Findings of lack of good faith in proceedings based on §§ 362(d) or 1112(b) have been predicated on certain recurring but non-exclusive patterns, and they are based on a conglomerate of factors rather than on any single datum. Several, but not all, of the following conditions usually exist. The debtor has one asset, ... a tract of undeveloped real property. The secured creditors' liens encumber this tract. There are generally no employees except for the principals, little or no cash flow, and **no available sources of income** to sustain a plan of reorganization or to make adequate protection payments pursuant to 11 U.S.C. §§ 361, 362(d)(1), 363(e), or 364(d)(1). Typically, there are only a few, if any, unsecured creditors whose claims are relatively small. The property has usually been posted for foreclosure because of arrearages on the debt and the debtor has been **unsuccessful in defending actions against the foreclosure** in state court. Alternatively, the debtor and one creditor may have proceeded to a stand-still in state court litigation, and the debtor has lost

> or has been required to post a bond which it cannot afford. **Bankruptcy offers the only possibility of forestalling loss of the property**. There are sometimes allegations of wrongdoing by the debtor or its principals. The "new debtor syndrome," in which a one-asset entity has been created or revitalized on the eve of foreclosure to isolate the insolvent property and its creditors, exemplifies, although it does not uniquely categorize, bad faith cases.
>
> Resort to the protection of the bankruptcy laws is not proper under these circumstances because there is no going concern to preserve, there are no employees to protect, and there is no hope of rehabilitation, except according to the debtor's "terminal euphoria."

Matter of Little Creek Development Co., 779 F.2d 1068, 1072-73 (5th Cir. Tex. 1986) (footnotes omitted); a*ccord* In re Oakbrook Village, Inc., 108 B.R. 838, 844 (Bankr. S.D. Ga. 1989) (single asset apartment complex case); *see also* Morgan Fiduciary, Ltd. v. Citizens & Southern Intern. Bank, 95 B.R. 232, 233 (S.D. Fla.1988).

Here, the analysis set forth above for dismissal is equally relevant to Creditor's request for relief from the automatic stay. Although the Collateral would be necessary to reorganize, the fact remains that the Debtor has no realistic opportunity to confirm a plan and is simply looking to buy more time to liquidate its assets. This case was filed in bad faith merely to delay the foreclosure. Therefore, the Court should enter an order granting relief from the automatic stay. The following facts evidence bad faith on Debtor's part:

    a.     Creditor's lien fully encumbers all of Debtor's property.

    b.     The dispute is with one creditor and Debtor has no other significant claims.

    c.     Debtor has few non-insider employees.

    d.     The Property was subject to a pending foreclosure case.

    e.     Debtor's financial problems primarily involve a dispute between the Debtor and this Creditor only.

    f.     Debtor has not established that it has any equity in the Property and there is no reasonable possibility of an effective reorganization of Debtor.[9]

---

[9] Even if Debtor could show a potential plan (which it cannot), "[a] possible equity in the property or potential successful reorganization ... cannot transform a bad faith filing into one undertaken in good faith." Phoenix Piccadilly, 849 F.2d at 1395.

g.     The timing of the filing evidences an attempt to delay or frustrate the legitimate efforts of Creditor to enforce rights under state law.

Given the foregoing, the bad faith in filing its Bankruptcy Case cannot be questioned. Cause therefore exists to grant Creditor relief from the automatic stay.

## ii.   *Lack of Adequate Protection*[10]

Debtor has not and cannot provide Creditor with adequate protection. Lack of adequate protection means, among other things, the diminution of a creditor's interest in collateral. United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assoc., 484 U.S. 365, 370 (1988); In re Wrecclesham Grange, Inc., 221 B.R. 978, 981 (Bankr. M.D. Fla. 1997) (adequate protection is designed to assure that a secured creditor does not suffer a decline in the value of its interest in the estate's property while the automatic stay remains in effect).

A creditor can show lack of adequate protection with evidence of "declining property values, the increasing amount of secured debt through interest accruals or otherwise, the non-payment of taxes or other senior liens, failure to insure the property, failure to maintain the property, or other factors that may jeopardize the creditor's present position." In re Anthem Communities/RBG, LLC, 267 B.R. 867, 871 (Bankr. D. Colo. 2001).

Here, Debtor has not made a regular loan payment for over three years and has no significant income to make any future payments. Moreover, there is no proven equity cushion available to shelter the growing debt owed to Creditor. Assuming there is any equity, pursuant to 11 USC § 506(b), Creditor is entitled to reasonable fees and costs and a default rate of 25% ($7,897.79 per

---

[10] An adequate protection analysis is unnecessary because the Prior Bankruptcy Schedules and sworn testimony confirm that Debtor has no ability to make adequate protection payments, there are no real unsecured creditors remaining, and the State Court Action was nearly complete at the time of the Petition.

day, or $244,831.56 per month).[11] At such rate, the debt will increase by almost $490,000 within the next 60 days. Thus, Creditor is not adequately protected.

Debtor is also delinquent on real property taxes for prior years and will currently owes additional taxes for 2019 (assessed as of November 1) that Debtor has no way of paying and insufficient operating revenues from which to pay such real property taxes.

The Debtor proposes that the Creditor simply "roll of the dice" and hope that the Debtor is able to find a buyer, investor, or new lender despite having failed to do so for the last three years. Creditor should be protected and should not have to bear the risk of this extremely risky gamble.

### iii. _Lack of Equity/Not Necessary to an Effective Reorganization_

The Debtor has no established equity in the Collateral (or very little), the Collateral is not needed for the orderly liquidation of the bankruptcy estate, and Creditor should be allowed relief from the bankruptcy stay to allow it to liquidate its Collateral in state court through a foreclosure sale. Debtor has not made any regular payments upon the loan since before March 2016, has not made any post-petition payments, and **_has no ability to make any post-petition payments_**.

To determine whether Debtor has equity in the Property, the amount of debt and the value of the Collateral have to be considered. In re Ramos, 357 B.R. 669, 671-672 (Bankr. S.D. Fla. 2006) (where amount of claims secured by real property exceeds value, debtor has no equity in the property). In this case, as of November 6, 2019 (the State Court hearing date), the total amount due to Creditor was $13,831,447.80, without accounting for the past due real property taxes or the taxes currently due for 2019. Since the Petition was filed, at the default rate, an additional debt of nearly $250,000 has accrued. The assessed value of the Collateral in 2017, was just over $10

---

[11] Even at the contract rate, the per diem is $1,932.18 or $59,897.51 per month.

million. Debtor's arguments that the value of the Property is at least $20 million is based upon pure speculation.

Creditor believes that the Property's value is more realistically placed at approximately $10 to $12 million based on the 2017 tax records. Thus, the amount of debt against the Property, once attorney fees, taxes, and insurance are included, would currently exceed the value even without default interest.

Further, the Property is not necessary to an effective reorganization. In order to show that the Property is necessary to an effective reorganization, the Debtor must show that there is a reasonable prospect of a successful reorganization within a reasonable period of time. Timbers of Inwood Forest Assoc., 484 U.S. at 375-76. The mere indispensability of the property to the Debtor's survival and the Debtor's hopes of reorganization are insufficient to justify continuation of the stay when reorganization is not reasonably possible. In re Albany Partners, Ltd., 749 F.2d 670, 673 n. 7 (11th Cir.1984).

The Debtor's success depends upon the ability to come up with significant cash for past due taxes and expenses with no realistic (or any) expectation that it can come up with about funds to pay the Creditor's Loans.

The Debtor has not even been able to clear the liens upon the Collateral imposed by the County for various zoning or ordinance violations that passed through the Prior Bankruptcy. Before the Debtor can even begin to approach lenders or investors, those county liens would need to be cleared -- some of which are believed to be incurring $1,000 per day penalties.

### iv.  *Scheme to Delay or Hinder*

Pursuant to § 362(d)(4)(B), this Court may also grant stay relief where a Bankruptcy is part of a scheme to hinder and delay a creditor through multiple bankruptcy filings affecting such

Property. This is the _**fourth**_ bankruptcy (along with the Unnerstall Bankruptcy, the Prior Bankruptcy, and the Eztopeliz Bankruptcy) arising out of the same relationship with this Creditor and affecting the interests and equities in the Collateral. The Prior Bankruptcy was filed on the eve of a hearing to appoint a receiver over the Debtor, the Unnerstall Bankruptcy was filed just days after Creditor filed a summary judgment motion in the Missouri Case, and the Eztopeliz Bankruptcy was filed on the eve of a foreclose sale.

After three years and the benefit of a prior reorganization and after materially defaulting under the terms of the Cocoa Plan, the Debtor now wants yet another bite at the apple.

**D. This Court Should Abstain**

Pursuant to 11 USC § 305(a)(1), this Court should abstain from proceeding in this matter in favor of the Foreclosure Action because such state court matter is more economically efficient and presents a better and quicker alternative means of concluding the dispute between the parties. Zais Investment Grade, at 847.

**WHEREFORE**, Creditor Bank of Washington moves this honorable Court for an order:

1.      Dismissing this case and directing the Clerk to accept no further filings from the Debtor or Petitioning Creditors and, or alternatively, directing that any further filings during the period enjoined will be annulled; imposing sanctions pursuant to § 9011(c) as requested herein; advising that further sanctions will be entered against the Debtor or Petitioning Creditors for failure to comply; and for such other relief as is just and equitable.

2.      In the alternative, this Court should either abstain from hearing this matter in favor of the Foreclosure Action or grant Creditor Relief from the automatic stay to pursue the Foreclosure Action and recover the Collateral, and for such other relief as is just and equitable.

Submitted on December 4, 2019, by attorneys for Bank of Washington.

> Fassett, Anthony & Taylor, P.A.
> 1325 W. Colonial Drive
> Orlando, FL. 32804
> Tel: 407-872-0200
> Fax: 407-422-8170
>
> /s/ *Phil A. D'Aniello*
> Phil A. D'Aniello, Esq.
> Florida Bar No. 0115525
> pdaniello@fassettlaw.com
> tsadaka@fassettlaw.com

## Certificate of Service

I HEREBY CERTIFY that a true and correct copy of the foregoing was delivered to the parties on the listed below via CM/ECF and email and via US Mail to the parties as listed on attached Creditor Matrix on December 4, 2019.

> /s/ *Phil A. D'Aniello*
> Phil A. D'Aniello, Esq.

**Service List:**

Cocoa Expo Sports Center, LLC
David McFarlin, Esq.
dmcfarlin@fisherlawfirm.com

UDF XIV SPE B, LLC,
Urban Development Fund XXIII, LLC
Deego Productions, Inc.
Jules S. Cohen, Esq.
Jules.cohen@skerman.com

Label Matrix for local noticing
113A-6
Case 6:17-bk-00441-KSJ
Middle District of Florida
Orlando
Mon Nov 25 11:31:25 EST 2019

Brevard County Board of County Commissioners
2725 Judge Fran Jamieson Way
Building C, Suite 308
Viera, FL 32940-6605

Brevard County Tax Collector (TF)
PO Box 2500
Titusville, FL 32781-2500

City Electric Supply Company
c/o Jimmy Parrish, Esq.
Baker & Hostetler LLP
200 S. Orange Ave.
SunTrust Center, Suite 2300
Orlando, FL 32801-3432

Cocoa Expo Sports Center, LLC
500 Friday Road
Cocoa, FL 32926-3302

FCCI Insurance Group
c/o Alberta L. Adams
Mills Paskert Divers
100 N Tampa St, Ste 3700
Tampa, FL 33602-5835

Fairmont State University
Candace Kraus
Legal Division 8th Fl
1018 Kanawha Blvd E
Charleston, WV 25301-2841

Middlesex Paving, LLC
c/o Nardella & Nardella, PLLC
250 E. Colonial Drive, Suite 102
Orlando, FL 32801-1231

Smith & Associates
Smith & Associates
1499 S. Harbor City Blvd.
Suite 202
Melbourne, FL 32901-3245

Sri Jalaram, LLC
Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Ave., Ste 1400
c/o Justin M. Luna, Esq.
Orlando, FL 32801-2367

UDF XIV SPE B, LLC
c/o Jules S. Cohen, Esq.
Akerman LLP
P.O. Box 231
Orlando, FL 32802-0231

Urban Development Fund XXIII, LLC
c/o Jules S. Cohen, Esq.
Akerman LLP
P.O. Box 231
Orlando, FL 32802-0231

ATCF II Florida-A LLC, MTAG
as Custodian for ATCF II
Florida-A LLC
PO Box 54972
New Orleans, LA 70154-4972

Air Resources International
1600 Sarno Road, Suite 14
Melbourne, FL 32935-4993

Alterna
Alterna Capitol Management
PO Box 54292
New Orleans, LA 70154-4292

Andrew M. Brumby
Shutts & Bowen LLP
300 S. Orange Ave. Ste. 1000
Orlando, FL 32801-5403

Armitage Plumbing, LLC
c/o Angela Armitage
3034 Royal Palm
Edgewater, FL 32141-6113

BSE Consultants, Inc
312 South Harbor City Blvd
Suite 4
Melbourne, FL 32901-1351

(p)BANK OF WASHINGTON
P O BOX 377
WASHINGTON MO 63090-0377

Bank of Washington
c/o Armstrong Teasdale LLP
7700 Forsyth Blvd, Ste 1800
Attn: Bruce D. LeMoine
Saint Louis, MO 63105-1807

Bank of Washington
c/o Phil A. D'Aniello, Esq.
1325 West Colonial Dr
Orlando, FL 32804-7133

Board of County Commissioner
Code Enforcement
2725 Judge Fran Jamieson Way
Building A, Room 103
Viera, FL 32940-6605

Board of County Commissioner
of Brevard County, Florida
2725 Judge Fran Jamieson Way
Melbourne, FL 32940-6605

Brevard County Tax Collector
Attn: Honorable Lisa Cullen, CFC
Post Office Box 2500
Titusville FL 32781-2500

Brevard County Tax Collector
Attn: Lisa Cullen, CFC
PO Box 2500
Titusville, FL 32781-2500

Caz Creek Florida II, LLC
MTAG Caz Creek Tax Lien Fund LLC
PO Box 54303
New Orleans, LA 70154-4303

City Electric Supply Company
6827 N Orange Blossom Trail
Suite 2
Orlando, FL 32810-4171

City Electric Supply Company
Jimmy D. Parrish
BAKER & HOSTETLER LLP
200 S. Orange Ave, Suite 2300
Orlando, FL 32801-3432

City Electric Supply Company
c/o Jimmy D. Parrish, Esq.
Baker & Hostetler LLP
200 S. Orange Ave., Suite 2300
Orlando, FL 32801-3432

City Electric Supply Company
c/o Michael E. Milne, Esq
Milne Law Group, PA
545 Delaney Ave, Bldg 8
Orlando, FL 32801-3866

City of Cocoa Utilities
Customer Service
65 Stone Street
Cocoa, FL 32922-7982

Cocoa Expo Sports Center
Tenant, LLC
500 Friday Road
Cocoa, FL 32926-3302

Commerce and Industry Insurance Company
Kevin J. Larner, Authorized Representati
175 Water Street, 15th Floor
New York, New York 10038-4918

Dale & Company
651 North Mills Avenue
Orlando, FL 32803-4640

David R. McFarlin
Fisher Rushmer, P.A.
390 North Orange Avenue
Suite 2200
Orlando, FL 32801-1642

Ecolab Inc
Corporate Center
370 N Wabasha Street
Saint Paul, MN 55102-1334

FCCI Insurance Company
6300 University Parkway
Sarasota, FL 34240-7043

FPL
General Mail Facility
Miami, FL 33188-0001

Fairmont State College
1300 Locust Avenue
Fairmont, WV 26554-1436

Fairmount State University
Candace Kraus
Legal Div 8th Fl
1018 Kanawha Blvd E
Charleston WVA 25301-2841

Firetronics, Inc
1035 Pine Hollow Point Drive
Altamonte Springs, FL 32714-7111

Florida City Gas
PO Box 4569
Location 6250
Atlanta, GA 30302-4569

Florida Department of Revenue
Bankruptcy Unit
Post Office Box 6668
Tallahassee FL 32314-6668

Florida Power & Light Co
PO Box 025209
Miami, FL 33102-5209

Fortiline Inc
fka MSC Waterworks Co
Attn: Branch Manager
2291 W Airport Blvd
Sanford, FL 32771-3003

Fortiline Waterworks
7025 Northwinds Drive NW
Concord, NC 28027-3334

Hanson
PO Box 842481
Dallas, TX 75284-2481

Holiday Inn Express Cocoa
301 Tucker Lane
Cocoa, FL 32926-3106

Internal Revenue Service
PO Box 7346
Philadelphia, PA 19101-7346

Jeffrey Unnerstall
c/o Peter N. Hill, Esq.
135 W. Central Blvd., Ste. 650
Orlando, FL 32801-2436

Leonard Unnerstall
602 St Marys Road
Villa Ridge MO 63089-2319

Linnea & Richard Harding, as
rep Estate of Aaron S. Hardy
c/o Paul E. Bross, Esquire
50 N Grove Street
Merritt Island, FL 32953-3440

Littlejohn Engineering Assoc
1615 Edgewater Drive
Suite 180
Orlando, FL 32804-5851

M&M Electric of CFL, Inc
PO Box 721146
Orlando FL 32872-1146

MBCI
NCI Group, Inc
PO Box 840326
Dallas, TX 75284-0326

MTAG as Custodian for CAZ
Creek Florida II, LLC
PO Box 54900
New Orleans, LA 70154-4900

Middlesex Paving LLC
c/o Barry Kalmanson, PA
500 North Maitland Ave
Suite 305
Maitland, FL 32751-4463

Middlesex Paving, LLC
10801 Cosmonaut Blvd
Orlando, FL 32824-7627

Middlesex Paving, LLC
c/o Michael A. Nardella, Esq.
250 E. Colonial Drive, Suite 102
Orlando, FL 32801-1231

New Line Transport
1204 NW 137th Avenue
Miami, FL 33182-1803

Pac-Van, Inc
75 Remittance Drive
Suite 3300
Chicago, IL 60675-3300

SYSCO CENTRAL FLORIDA INC
C/O FRANK N WHITE
171 17TH STREET NW SUITE 2100
ATLANTA GA 30363-1031

Smith & Associates
1499 S Harbor City Blvd
Suite 202
Melbourne, FL 32901-3245

Smith & Associates
1499 S. Harbor City Blvd., Ste. 202
Melbourne, FL 32901
( 32901-3245

Sompo International
Attn: Rochelle Goldberg
3333 New Hyde Park Road, Ste. 210
New Hyde Park, NY 11042-1223

South Milhausen, PA
1000 Legion Place
Suite 1200
Orlando, FL 32801-1005

Southern Fire Protection
of Orlando, Inc
3801 East SR 46
Sanford, FL 32771

Spectrum
PO Box 30574
Tampa, FL 33630-3574

Sri Jalaram, LLC
525 Chaffee Point Blvd
Jacksonville, FL 32221-4109

Sri Jalaram, LLC
5575 N Atlantic Ave
Cocoa Beach, FL 32931-3764

Sri Jalaram, LLC
c/o Jay R. Thakkar, Esq
Cantwell & Goldman PA
96 Willard St, Suite 302
Cocoa, FL 32922-7947

Sri Jalaram, LLC
c/o Justin M. Luna, Esq.
Latham, Shuker, Eden & Beaudine, LLP
111 N. Magnolia Avenue, Suite 1400
Orlando, FL 32801-2367

Sri Jalaram, LLC dba
Holiday Inn Express Cocoa
301 Tucker Lane
Cocoa, FL 32926-3106

Sysco Central Florida, Inc
200 West Story Road
Ocoee, FL 34761-3004

UDF XIV SPE B, LLC
216 W Ohio Street, 5th Floor
Chicago, IL 60654-5698

UDF XIV SPE B, LLC
c/o Esther McKean, Esq.
Akerman LLP
P.O. Box 231
Orlando, FL 32802-0231

United States Trustee - ORL
Office of the United States Trustee
George C Young Federal Building
400 West Washington Street, Suite 1100
Orlando, FL 32801-2210

Univ Engineering Sciences
PO Box 25316
Tampa, FL 33622-5316

Upland Develop of CFL, Inc
500 Friday Road
Cocoa, FL 32926-3302

Upland Development LLC
500 Friday Road
Cocoa, FL 32926-3302

Upland Investments, LLC
500 Friday Road
Cocoa, FL 32926-3302

Upland Ventures, Inc
500 Friday Road
Cocoa, FL 32926-3302

Urban Development Fund XXIII
216 W Ohio Street, 5th Floor
Chicago, IL 60654-5698

Waste Management Inc of FL
PO Box 42930
Phoenix, AZ 85080-2930

Andrew M Brumby
Shutts & Bowen LLP
300 South Orange Avenue, Suite 1600
Orlando, FL 32801-3382

David R McFarlin
Fisher Rushmer, PA
390 N Orange Avenue, Suite 2200
Orlando, FL 32801-1642

Jeffrey C Unnerstall
10919 Boca Pointe Drive
Orlando, FL 32836-5861

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified
by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

Bank of Washington
200 W Main Street
Washington, MO 63090

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)BSE Consultants, Inc.

(u)Bank of Washington

(d)Cocoa Expo Sports Center, LLC
500 Friday Road
Cocoa, FL 32926-3302


(d)FCCI Insurance Group
c/o Alberta L. Adams
Mills Paskert Divers
100 N Tampa Street, Ste 3700
Tampa, FL 33602-5835

(d)Florida Dept. of Revenue
Bankruptcy Unit
PO Box 6668
Tallahassee, FL 32314-6668

(d)Internal Revenue Service
Post Office Box 7346
Philadelphia PA 19101-7346


(d)Middlesex Paving, LLC
c/o Nardella & Nardella, PLLC
250 E. Colonial Drive, Suite 102
Orlando, FL 32801-1231

(d)UDF XIV SPE B, LLC
c/o Jules S. Cohen, Esq.
Akerman LLP
P.O. Box 231
Orlando, FL 32802-0231

(d)Urban Development Fund XXIII, LLC
c/o Jules S. Cohen, Esq.
Akerman LLP
P.O. Box 231
Orlando, FL 32802-0231


End of Label Matrix
Mailable recipients    86
Bypassed recipients     9
Total                  95

Label Matrix for local noticing
113A-6
Case 6:19-bk-07295-KSJ
Middle District of Florida
Orlando
Mon Nov 25 11:29:53 EST 2019

Cocoa Expo Sports Center, LLC
500 Friday Road
Cocoa, FL 32926-3302

Deego Productions, Inc.
c/o Jules S. Cohen, Esq.
Akerman LLP
P.O. Box 231
Orlando, FL 32802-0231

UDF XIV SPE B, LLC
c/o Jules S. Cohen, Esq.
Akerman LLP
P.O. Box 231
Orlando, FL 32802-0231

Urban Development Fund XXIII, LLC
c/o Jules S. Cohen, Esq.
Akerman LLP
P.O. Box 231
Orlando, FL 32802-0231

Bank of Washington
c/o Phil A. D'Aniello, Esq.
1325 West Colonial Drive
Orlando, FL 32804-7133

Jules S Cohen +
Akerman Senterfitt
Post Office Box 231
420 South Orange Avenue
Orlando, FL 32801-3313

Phil A D'Aniello +
Fassett Anthony & Taylor PA
1325 West Colonial Drive
Orlando, FL 32804-7133

Note: Entries with a '+' at the end of the
name have an email address on file in CMECF

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Bank of Washington

(u)Karen S. Jennemann
Orlando

End of Label Matrix
Mailable recipients      8
Bypassed recipients      2
Total                   10